IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BASEM M.F. HUSSEIN, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| UNIVERSAL DEVELOPMENT | ) |
| MANAGEMENT, INC. t/d/b/a | )  2:01cv2381 |
| The Meadows Apartments, | ) |
| UDE OF MITCHELL ROAD, LTD, and | ) |
| SHERRI LYNN WILSON, | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER OF COURT

Before the Court for consideration and disposition are the following post-trial motions: the RULE 50 MOTION OF DEFENDANTS, UNIVERSAL DEVELOPMENT MANAGEMENT, INC., T/D/B/A THE MEADOWS APARTMENTS, UDE OF MITCHELL ROAD, LTD., AND SHERRI LYNN WILSON ("Rule 50 Motion") (*Document No. 136*) and the RULE 59 MOTION OF DEFENDANTS, UNIVERSAL DEVELOPMENT MANAGEMENT, INC., T/D/B/A THE MEADOWS APARTMENTS, UDE OF MITCHELL ROAD, LTD., AND SHERRI LYNN WILSON ("Rule 59(e) Motion") (*Document No. 137*). The issues have been fully briefed. *See* Document Nos. 148, 149, 151, 158-60, & 166.

Background

This action arises out of events which occurred on September 11, 2001. The basic facts of the case are as follows: Plaintiff is a radiologist of Arabic descent and, at the relevant time, was a resident of The Meadows Apartments ("The Meadows"). Defendant Sherri Lynn Wilson ("Wilson") was the resident manager of The Meadows. After the terrorist attacks occurred, Wilson, with the assistance of The Meadows' maintenance man, entered Plaintiff's apartment and looked around at the contents and condition thereof. Wilson reported to the local police that the items and conditions that she found in the apartment were suspect and possibly indicative of terrorist activity. For example, Wilson reported that she found a white powder on counter tops in the apartment. The white powder turned out to be dust. She also told the police that she saw a

flying manual for a commercial jet airplane and a computer disc jacket which depicted an airplane exploding in midair. The "flying manual" was an instruction for a computer game, and the computer disc jacket, which also related to a computer game, actually depicted a plane flying into the sunset. Plaintiff introduced considerable evidence at trial from which the jury could have believed that Wilson either grossly exaggerated or simply lied about the existence and/or character of the items that she saw in his apartment. The Federal Bureau of Investigation ("FBI") quickly became involved in an investigation of Plaintiff and obtained a search warrant for his apartment, which was immediately executed. *See* Document No. 22.

At the time of the terrorist attacks, Plaintiff was working as a radiologist on assignment in New Mexico on a "locum tenens" basis. The FBI located and detained Plaintiff in New Mexico and questioned him regarding his knowledge of and involvement in the terrorist attacks. The matter received considerable publicity in the local and national media after September 11, 2001. Plaintiff was also subpoenaed to testify before a federal grand jury empaneled in the Western District of Pennsylvania, but the FBI investigation of Plaintiff was discontinued before his grand jury appearance was scheduled to take place. Plaintiff was never charged with a criminal offense, and the FBI investigation ultimately concluded that he had no connection whatsoever to the terrorist activity. All of the items found by the FBI in Plaintiff's apartment were lawful to possess and had some innocent explanation. Nevertheless, Plaintiff was terminated from his position in New Mexico. Additionally, Defendants declined to renew Plaintiff's month-to-month lease at The Meadows Apartments, and he was forced to relocate.

Plaintiff filed a Complaint which alleged violations of 42 U.S.C. § 1981 and the Fair Housing Act, as well as state law claims for trespass and invasion of privacy.[1] A jury trial commenced on September 12, 2005. Plaintiff rested on September 15, 2005. Defendants then made an oral motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The Court heard the parties' arguments and denied the motion on the record.

---

[1] Plaintiff's claim for invasion of privacy was actually based on the two separate theories: "false light" invasion of privacy and "intrusion upon seclusion."

Defendants then presented additional evidence and rested.  Defense counsel thereafter renewed the motion for judgment as a matter of law "for the reasons previously stated," which the Court denied summarily.[2]  *See* Reply in Supp. of Def's Rule 50 Motion at unnumbered 3.

The jury heard closing arguments and was charged on September 16, 2005.  On September 22, 2005, the jury found Defendants liable for invasion of privacy, but not liable as to the alleged violations of 42 U.S.C. § 1981, the Fair Housing Act, and trespass.  Document No. 129.  The jury awarded Plaintiff compensatory damages of $850,000 and punitive damages of $1,600,000, for a total award of $2,450,000.  The Court entered judgment on the verdict, and Defendants timely filed the instant motions.

### Standard of Review

A motion for judgment as a matter of law is governed by Rule 50 of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(a) Judgment as a Matter of Law.**
> (1)  If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law . . . .
>
> **(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial**.  If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment. . . .  In ruling on a renewed motion, the court may:
> > (1) if the verdict was returned:
> > > (A) allow the judgment to stand,
> > > (B) order a new trial, or
> > > (C) direct entry of judgment as a matter of law; . . . .

Fed. R. Civ. P. 50(a)(1) and (b).

A Rule 50 motion should be granted only if "viewing the evidence in the light most

---

[2]  The parties did not argue the renewed motion for judgment as a matter of law in any meaningful way.

favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability." *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 568 (3d Cir. 2002) (citation omitted). Judgment as a matter of law pursuant to Rule 50(b) is proper when the evidence and its inferences, considered as a whole and viewed in the light most favorable to the nonmoving party, can support only one reasonable conclusion-- that the moving party is entitled to judgment notwithstanding the adverse verdict. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150-51 (2000). Although judgment as a matter of law should be granted sparingly, "federal courts do not follow the rule that a scintilla of evidence is enough. The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978). "A jury verdict can be displaced by judgment as a matter of law only if the record is critically deficient of the minimum quantum of evidence from which the jury might reasonably afford relief." *Wilson v. Philadelphia Detention Center*, 986 F. Supp. 282, 286 (E.D. Pa. 1997) (quotations and internal quotation marks omitted).

In the alternative, Defendants contend in their Rule 59(e) Motion that the Court should order a new trial, vacate the punitive damages award or grant a remittitur of a portion of the punitive damages award. Pursuant to Rule 59 of the Federal Rules of Civil Procedure:

> A new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . .

Fed. R. Civ. P. 59(a).

The standard for granting a new trial is less rigorous than the standard for granting judgment as a matter of law and the court may grant a new trial even when it finds that a judgment as a matter of law is not an appropriate remedy. *Roebuck v. Drexel University*, 852 F.2d 715, 735 (3d Cir. 1988). A motion for a new trial may be sought on the grounds that the verdict is against the weight of the evidence, that the damages are excessive, or that the district court made substantial errors in the admission or rejection of evidence or in its instructions to the

jury. *See Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). Generally, the decision whether or not to grant a new trial "is committed to the sound discretion of the district court." *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 812 (3d Cir. 1984). The district court's latitude varies, however, depending upon the type of error alleged. *Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993). Its latitude "is broad when the reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court," such as evidentiary rulings. *Id*. The district court's discretion is more limited, however, when the type of error alleged is that the jury's verdict is against the weight of the evidence. In such a situation, a new trial should be awarded "only when the record shows that the jury's verdict resulted in a miscarriage of justice or when the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Id.* The Court of Appeals for the Third Circuit has observed that "[t]his limit upon the district court's power to grant a new trial seeks to ensure that a district court does not substitute its 'judgment of the facts and the credibility of witnesses for that of the jury.'" *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 211 (3d Cir. 1992) (citation omitted).

Discussion

A.   Defendants' Rule 50 Motion

In their Rule 50 motion Defendants contend that Plaintiff's "right to seclusion" was not violated, *i.e*, that his privacy was not invaded, that the jury improperly decided Plaintiff's claim for false light invasion of privacy, and that the Court should have dismissed the state law claims after the jury found in favor of Defendants on the federal claims. Rule 50 Motion at 6, 15 & 20. Plaintiff contends that "Following the close of Plaintiff's case, and following the close of all evidence, Defendants' Rule 50 Motion did not state with specificity the facts and law entitling them to Judgment as a Matter of Law on Plaintiff's state law claims of trespass and invasion of privacy." Brief in Opp. to Rule 50 Mot. at 7. Therefore, according to Plaintiff, these issues have been waived and may not be raised in a Rule 50(b) motion. Defendants, on the other hand, contend that "[a]t the time the Rule 50 motion was made, both parties understood it to address

the state law causes of action as well [as the federal causes of actions]," that "the state causes of action were mentioned as a part of the motion," and that "the surrounding circumstances indicated that all present understood the motion to be made as to those causes of action as well." Def's Reply in Supp. of Rule 50 Mot. at 8-9.

Our court of appeals has provided the following guidance with respect to waiver of issues in a Rule 50(b) motion:

> In order to preserve an issue for judgment pursuant to Rule 50(b), the moving party must timely move for judgment as a matter of law at the close of the nonmovant's case, pursuant to Rule 50(a), and specify the grounds for that motion. Absent a motion in accordance with Federal Rule of Civil Procedure 50(a), judicial reexamination of the evidence abridges [a party's] right to a trial by jury. ... A motion for judgment as a matter of law pursuant to Rule 50(b) must be preceded by a Rule 50(a) motion sufficiently specific to afford the party against whom the motion is directed with an opportunity to cure possible defects in proof which otherwise might make its case legally insufficient.

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1172-73 (3d Cir. 1993) (citations and quotation marks omitted); *see also Bonjorno v. Kaiser Aluminum and Chemical Corp.*, 752 F.2d 802, 814 (3d Cir.1984) ("[t]he specific grounds for a JNOV must be asserted in the motion for a directed verdict.... If the issue was not raised in the motion for the directed verdict at the close of all the evidence, it is improper to grant the JNOV on that issue.").

As mentioned earlier, Defendants made a motion for judgment as a matter of law immediately after Plaintiff rested. The Court heard arguments on the motion, and at the conclusion of said arguments the motion was denied. A review of the transcript[3] reveals that the arguments of defense counsel (and Plaintiff's counsel) focused exclusively on whether Plaintiff had introduced sufficient evidence in support of his federal claims. Indeed, defense counsel's only reference to the state law causes of action was as follows: "Finally, to the extent that the Court is inclined to grant our motion, we would ask the Court to relinquish jurisdiction over the state pending actions." This brief reference to the state law causes of action is not sufficiently specific as to invasion of privacy to "afford the party against whom the motion is directed with

---

[3] *See* Plaintiff's Motion for Sanctions, exh. 1.

an opportunity to cure possible defects in proof ..." *Lightning Lube, Inc.*, 4 F.3d at 1173.[4] Indeed, this statement reflects that the arguments of defense counsel did not address the merits of Plaintiff's state law causes of action in any meaningful way. Therefore, the Court finds and rules that Plaintiff has waived, and may not raise in the instant motion, any issue as to the merits of Plaintiff's claim for invasion of privacy.

There is one issue, however, that was not waived. During the Rule 50 argument counsel for Defendants specifically requested that the Court relinquish jurisdiction over the state law causes of action. Therefore, although this issue lacks merit, it was not waived. Defendants now contend that the Court should have "dismissed the state claims after the federal claims were denied by the jury." Rule 50 Motion at 20.

At the conclusion of the trial the foreperson of the jury published the verdict in the order that the claims were addressed on the verdict sheet, *i.e.*, the verdict was read as to the federal claims, followed by the state law claims. Defendants apparently contend that the Court should have interrupted the jury foreperson immediately after the verdict was read as to the federal claims, disregard the verdicts reached by the jury as to the state law claims, dismiss the jury, enter a judgment on only the federal claims, and send the remainder of the case to state court for a new trial on the state law claims. The Court has found no case law which supports such a course of action. Moreover, assuming *arguendo* that the Court had the discretion to relinquish pendent jurisdiction during the publication of the verdict, the Court would decline to do so for reasons which should be obvious and merit no further discussion. Therefore, Defendants' Rule

---

[4] Defendants also contend that they relied upon their two trial briefs in making the Rule 50 motion, that their first trial brief specifically addressed Plaintiff's state [law] causes of action, and that therefore these issues were raised and preserved for re-argument in the instant Rule 50(b) motion. Def's Reply to Pltf's Mot. for Sanctions at 4. Defendants' Trial Memorandum does argue, albeit briefly, that Plaintiff cannot prevail on his claim for invasion of privacy. *See* Document No. 117 at 19. The Supplemental Trial Memorandum of Defendants (Document No. 114, *errata* at 118) addresses only the federal causes of action. In any event, defense counsel did not specifically invoke the relevant portion of his Trial Memorandum during the argument, nor did defense counsel otherwise specifically address Plaintiff's invasion of privacy claim. Therefore, issues regarding the merits of said claim may not be raised in the instant Rule 50 Motion.

50 Motion will be denied.

B.    Defendants' Rule 59(e) Motion

Defendants contend in their Rule 59(e) Motion that the judgment should be altered and/or amended because 1) Plaintiff failed to establish any economic damages with regard to his invasion of privacy claims, 2) Plaintiff failed to establish emotional distress damages with regard to his invasion of privacy claims, 3) the Court failed to instruct the jury as to causation with regard to his invasion of privacy claims, 4) Plaintiff failed to establish causation with regard to any damages claimed, and 5) the jury's award of punitive damages was inappropriate (and therefore remittitur should be granted). Rule 59(e) Motion at 4, 5, 11, & 16. Plaintiff concedes that pursuant to an agreement with defense counsel he agreed that he would not, and in fact did not, present any specific evidence of economic damages at trial. Pltf's Br. in Opp. to Rule 59(e) Motion at 2. Therefore, there is no issue as to the sufficiency of the evidence of Plaintiff's economic damages. Plaintiff also contends that Defendants' failure to raise issues regarding the sufficiency of the evidence of invasion of privacy during the Rule 50(a) motion precludes the consideration of said issues in a Rule 59(e) motion due to waiver. *Id.* at 10-11. Our court of appeals has instructed that "the failure to move for a directed verdict at the close of all evidence does more than limit an aggrieved party's remedy to a new trial. In this Circuit, it wholly waives the right to mount any post-trial attack on the sufficiency of the evidence." *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1262 (3d Cir.1991). Thus, arguments based on sufficiency of the evidence are foreclosed under Rule 59 for the same reason that they are foreclosed under Rule 50(b). *Stadtlander Drug Co., Inc. v. Brock Control Systems, Inc.*, 174 F.R.D. 637, 640-41 (W.D. Pa. 1997); *see also United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1128 (10th Cir.), *aff'd.*, 532 U.S. 588 (2001) ("A party may not circumvent Rule 50(a) by raising for the first time in a post-trial motion issues not raised in an earlier motion for directed verdict.") Therefore, the Court finds and rules that Defendants' failure to move for a judgment as a matter of law as to the invasion of privacy claims forecloses the consideration of said issues in the instant Rule 59 motion. Accordingly, the Court will decline to consider the merits of whether

Plaintiff established emotional distress damages or causation with regard to his invasion of privacy claims.

In light of the foregoing, the Court must consider whether the jury was properly instructed as to causation, and whether the jury's award of punitive damages was inappropriate, *i.e.*, whether remittitur should be granted. The Court will address these issues seriatim.

      1.      <u>Whether the Jury was Properly Instructed as to Causation of Damages</u>

Defendants contend that the Court failed "to instruct the jury as to causation regarding the invasion of privacy claim." Rule 59(e) Motion at 11. However, the Rule 59(e) Motion completely fails to articulate why the Court's instructions regarding the causal link between Plaintiff's injury and his damages was deficient. Defendant's Reply, however, devotes the following short paragraph to this argument:

> [C]onsidering the complexity of the issues addressed in this case, compounded by the federal claims, it is unlikely the inclusion of the words "as a result of" in some of the charges adequately informed the jury as to what was required to determine whether Hussein's injuries were a result of Ms. Wilson's actions. Further, there was no instruction as to the meaning of causation, nor was the jury clearly instructed that it must be found.

Defs' Reply to Rule 59(e) Motion at 5.

In order to determine whether the jury was properly instructed, the Court must assess "whether the charge, taken as a whole and viewed in light of the evidence, fairly and adequately submits the issues in the case to the jury" *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 100 (3d Cir.), *cert. denied*, 534 U.S. 1162 (2002) (citations and quotation marks omitted).

Upon review of the jury instructions, it is clear that the jury was repeatedly instructed that in order to award damages to Plaintiff, his damages must have been "as a result of" or "resulted from" Defendants' violations of his rights. The instructions of the Court relative to damages included, at the very beginning, the following general instructions:

> IF YOU FIND THAT THE DEFENDANTS ARE LIABLE TO THE PLAINTIFF, YOU MUST THEN FIND AN AMOUNT OF MONEY DAMAGES WHICH YOU BELIEVE WILL FAIRLY AND ADEQUATELY COMPENSATE THE PLAINTIFF <u>FOR THE INJURY HE HAS SUSTAINED</u>. THE AMOUNT

> WHICH YOU AWARD TODAY MUST COMPENSATE THE PLAINTIFF COMPLETELY FOR THE DAMAGES SUSTAINED IN THE PAST, AND WELL AS DAMAGES THE PLAINTIFF WILL SUSTAIN IN THE FUTURE.
>
> THE PLAINTIFF IS ENTITLED TO BE FAIRLY AND ADEQUATELY COMPENSATED FOR SUCH MENTAL ANGUISH, DISCOMFORT, INCONVENIENCE AND DISTRESS YOU FIND HE HAS ENDURED, FROM THE TIME OF THE EVENTS UNTIL TODAY.
>
> THE PLAINTIFF IS ENTITLED TO BE FAIRLY AND ADEQUATELY COMPENSATED FOR SUCH MENTAL ANGUISH, DISCOMFORT, INCONVENIENCE AND DISTRESS AS YOU BELIEVE HE WILL ENDURE IN THE FUTURE <u>AS A RESULT OF HIS INJURIES</u>.
>
> THE PLAINTIFF IS ENTITLED TO BE FAIRLY AND ADEQUATELY COMPENSATED FOR SUCH EMBARRASSMENT AND HUMILIATION AS YOU BELIEVE HE HAS ENDURED AND WILL CONTINUE TO ENDURE IN THE FUTURE <u>AS A RESULT OF HIS INJURIES</u>.

Court's Jury Instructions at 36-37 (emphasis added). The Court went on to individually address the damages available to Plaintiff in the event that the jury found Defendants liable for each of the four causes of action. As part of the damages instructions as to both federal causes of action, the Court instructed the jury that it "should award [Plaintiff] such actual or compensatory damages as you find, from a preponderance of the evidence, *which resulted from the Defendants' entry into Dr. Hussein's apartment and/or the subsequent order to vacate*." *Id*. at 37-39. As to the claim for invasion of privacy, the Court instructed the jury as follows:

> The plaintiff is entitled to be fairly and adequately compensated for such injuries as you believe he suffered *as a result of the Defendants' invasion of his privacy*. The plaintiff may recover damages for the following injuries:
>
> 1. The harm to his interest in privacy;
>
> 2. The mental distress suffered *as a result of the invasion of his privacy*; and
>
> 3. Any other injuries the plaintiff has suffered *as a result of the invasion of his privacy*.

*Id*. at 41. Finally, as to the claim for trespass, the jury was instructed that "[t]he plaintiff is entitled to be fairly and adequately compensated for such injuries as you believe he suffered *as a result of the defendants' trespass upon his property*." *Id*. at 42. Thus, the jury was instructed no less than eight (8) times that it could only award compensatory damages for those damages

"which resulted from," or which were "a result of," a violation of Plaintiff's rights. In the Court's view these instructions, taken as a whole, are more than sufficient to fairly and adequately instruct the jury that they could only award to Plaintiff those compensatory damages which were caused by Defendants' violation(s) of Plaintiff's rights.

Defendants also complain that there was no instruction as to the meaning of causation. However, Defendants' proposed jury instructions did not include a proposed instruction on causation of damages. Any request for such an instruction, if properly proposed, undoubtedly would have been granted, but Defendants never submitted a proposed instruction on this issue. Moreover, it is the Court's recollection that during the course of the trial, and during closing arguments, Defendants never contended that there was any real issue as to whether the actions of Defendants were the proximate cause of Plaintiff's damages. The Court also recalls that after the jury instructions/charge conference,[5] counsel for Defendants raised no objection to the alleged lack of a specific instruction on causation of damages. Additionally, in the Court's view there was no genuine issue regarding causation of damages in this case. Under these circumstances the Court finds no deficiency in its jury instructions which should warrant a new trial.

    2.      Whether Remittitur Should be Granted

Defendants, relying upon *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) and *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), contend that "it is clear that punitive damages are not justified, and to the extent that they are, the damages awarded are clearly excessive." Rule 59(e) Motion at 18. Defendants point out that their conduct did not produce physical harm, that there was no reckless disregard of Plaintiff's health or safety, that Plaintiff was not financially vulnerable, that the situation was only an "isolated incident" which "did not involve repeated conduct," and that Defendant Wilson could not have contemplated "the complex chain of events that transpired after her entry into plaintiff's apartment." *Id*. at 19-20. Plaintiff, on the other hand, contends that "the jurors could have concluded that Ms. Wilson

---

    [5] The parties were given ample time to review the Court's final jury instructions.

11

acted with malice due to a personal vendetta against him, and/or, they could have found that she lied to the Neshannock Township Police department, the State Police and the FBI, in reckless indifference to the rights of Dr. Hussein." Pltf's Br. at 9.

In *Gore*, *supra*, the Supreme Court instructed lower courts to consider three guideposts in their review of punitive damages: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Gore*, 517 U.S. at 575. The Court reiterated the teachings of *Gore* in *Campbell*, *supra*:

> [T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct. We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

*Campbell*, 538 U.S. at 430 (citations and quotation marks omitted). The *Campbell* court also observed that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," *id*. at 425, and that "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id*. However, "[t]he precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." *Id*.

The Court of Appeals for the Third Circuit has instructed that the trial court "should be alert to its responsibility to see that jury awards do not extend beyond all reasonable bounds." *Walters v. Mintex/International*, 758 F.2d 73, 82 (3d Cir. 1985); *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987). If the verdict is a result of passion or prejudice by the jury, a new

trial, rather than remittitur, is the appropriate remedy. *Dunn v. HOVIC*, 1 F.3d 1362, 1383 (3d Cir. 1993). Damage awards that are merely excessive or so large as to appear contrary to reason, however, are subject to remittitur rather than a new trial. *Brunnemann v. Terra Int'l Inc.*, 975 F.2d 175, 178 (5th Cir. 1992). Additionally, in reviewing a jury's verdict, the obligation of the district court "is to uphold the jury award, if there exists a reasonable basis to do so . . . . [A] court <u>may not</u> vacate or reduce the award merely because it would have granted a lesser amount of damages." *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989) (emphasis in original). The Court analyzes the guideposts set forth in *Gore* and *Campbell* as follows:

        a.        <u>The Degree of Reprehensibility of Defendants' Misconduct</u>

Under *Gore* and *Campbell* "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575; *Campbell*, 538 U.S. at 418 (*quoting Gore*). Initially, the Court notes in awarding punitive damages that the jury found that Defendants acted with malice or reckless indifference to the rights of Plaintiff. Defendants argue that this determination was erroneous for a variety of reasons, but the Court is neither empowered nor inclined to vitiate or otherwise second-guess this determination.[6] Suffice to say that there was ample evidence of record from which the jury could have, and did, infer that the actions of Wilson were taken with malice or, at the very least, reckless indifference to the rights of Plaintiff. The jury could have easily believed that Wilson entered Plaintiff's apartment under the pretext of changing furnace filters in order to "snoop around." The jury also could have easily believed that Wilson fabricated, embellished, or simply lied about what she saw in Plaintiff's apartment in order to paint a picture of him as a terrorist to the police. The actions of Wilson, viewed in the light most favorable to Plaintiff, hardly support

---

    [6] For example, Defendants apparently believe that the jury's finding that they were found not liable for the civil rights claims and trespass equates to an affirmative finding by the jury that Wilson lawfully entered Plaintiff's apartment with no discriminatory intent. Rule 59(e) Motion at 19. However, the Court is unwilling to construe the jury's verdict of "not liable" as to the federal civil rights counts as an affirmative finding that Wilson had permission to enter Plaintiff's apartment, or that she did so with no discriminatory intent.

Defendants' contention that she acted exclusively out of concern for the health and safety of other residents. *See* Rule 59(e) Brief at 19. The Court also rejects Defendants' contention that Wilson could not have contemplated "the complex chain of events that transpired after her entry into Plaintiff's apartment." *Id*. Everything that transpired after Wilson reported what she saw in Plaintiff's apartment to the local police was more or less what a reasonable person might expect to occur under the circumstances, *e.g.*, the response by the law enforcement community was hardly surprising in light of the horrific terrorist attacks which had occurred earlier that day.

In an assessment of the reprehensibility of Defendants' conduct, the Court must take into account whether "the harm caused was physical as opposed to economic ..." *Campbell*, 538 U.S. at 430. Plaintiff did not suffer a physical injury in the ordinary sense, *e.g.*, his did not lose a leg or break an arm due to Defendants' conduct. However, Plaintiff introduced evidence that he experienced considerable emotional distress, embarrassment and frustration due to the psychological impact of the whole ordeal. Thus, it cannot be said that Plaintiff suffered no physical injuries whatsoever.

With regard to economic damages, although counsel did not attempt to quantify a monetary amount of such damages at trial, Plaintiff undoubtedly suffered *some* economic damages due to Defendants' conduct in that he lost his job, lost his lease and was forced to relocate to another residence.

The Court must also consider whether "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others...." *Id*. The actions of Defendants did not place Plaintiff at risk of actual physical injury, and therefore this factor does not weigh in favor a large award of punitive damages. As to whether "the target of the conduct had financial vulnerability," Plaintiff was apparently a fairly well-compensated professional who was not generally at risk of a financial disaster due to Defendants' conduct. However, had the FBI investigation of Plaintiff not ended as quickly as it did, the cost of legal representation and the expense of an interruption and negative impact on Plaintiff's professional career could have quickly risen to a substantial amount. Fortunately for Plaintiff the investigation ended relatively quickly, and without significant disruption to his professional life. Suffice to say, however, that

the matter easily could have been much worse in that regard.

It is also relevant to consider whether "the conduct involved repeated actions or was an isolated incident; and [whether] the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id*. The conduct at issue in this case occurred over a relatively short period of time, and in some respects might be considered an isolated incident. On the other hand, Wilson took multiple voluntary actions on the day in question. The jury could have felt that there was no justifiable basis for her entry into plaintiff's apartment on that day, and that her excuse that the furnace filters needed to be changed was a mere ruse. The jury also could have believed that she lied to the police about what she saw and did so with malice, which set in motion the investigation and detention of Plaintiff.

The Court recognizes that the degree of reprehensibility of Defendants' misconduct is significant, but not extreme. Indeed, in some respects this is a close call, and none of the foregoing factors weigh overwhelmingly in favor of an exorbitant award of punitive damages. However, in the view of the Court the facts of this case, viewed in the light most favorable to Plaintiff, do not lead the Court to conclude that Defendants' misconduct was so lacking in reprehensibility that the jury's award of punitive damages should be disturbed.

> b. <u>The Disparity Between the Actual or Potential Harm Suffered by the Plaintiff and the Punitive Damages Award</u>

In this case Plaintiff concedes that no economic damages were proven.[7] Thus, the jury's award of compensatory damages should, at least in theory, consists entirely of non-economic damages, *i.e.*, compensation for mental and emotional distress and anxiety, humiliation, embarrassment, inconvenience, and the like. The Court is fairly confident that $850,000 fully compensates Plaintiff for his actual damages. The award of $1,600,000 in punitive damages is

---

[7] However, as mentioned earlier, Plaintiff undoubtedly suffered *some* economic loss due to what occurred. The loss of his job, loss of his lease and the expense of relocating undoubtedly caused some financial loss to Plaintiff notwithstanding the fact that Plaintiff never attempted to quantify his economic losses at trial.

nearly double that amount, *i.e.*, there is an approximate 1:2 ratio between compensatory and punitive damages. This ratio comports with the *Campbell* court's observation that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Campbell*, 538 U.S. at 425. This ratio is also consistent with the Court's earlier observation in *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991) that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Campbell*, 538 U.S. at 425 (*citing Haslip*, 499 U.S. at 23-24). Although "these ratios are not binding, they are instructive" and "demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1 ..." *Id*. In light of the foregoing, the Court finds that the disparity between the actual or potential harm suffered by Plaintiff and the $1,600,000 award of punitive damages does not amount to a due process violation under *Gore* and *Campbell*.

        c.    <u>The Difference Between the Punitive Damages Awarded by the Jury and the Penalties in Comparable Cases</u>

The parties have not directed the Court's attention to any civil penalties which might have been imposed upon Defendants in a comparable situation. This is not surprising given the unique circumstances of this case. However, Under Pennsylvania law the crime of "false reports to law enforcement authorities" is somewhat analogous. *See* 18 Pa. C.S.A. § 4906.[8] The maximum fine authorized for a violation of this statute is $10,000. 18 Pa. C.S.A. § 1101(4). This factor does not weigh in favor of sustaining the jury's award of punitive damages. However, "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575; *Campbell*, 538 U.S. at 418 (*quoting Gore*). As discussed above, there is considerable evidence of record that Defendants' conduct was reprehensible. Therefore, although the penalty in a somewhat similar situation does

---

    [8] It is permissible to consider comparable criminal penalties. *Campbell*, 538 U.S. at 428.

16

not weigh in favor of sustaining the punitive damages award, the weight to which this factor is entitled is not so great as to require that the award be vacated or reduced.

        d.        Comparison of the Factors and Conclusion

In the Court's view the jury's award of $1,600,000 in punitive damages is arguably "close to the line of constitutional impropriety." *Campbell*, 538 U.S. at 425. However, the conduct of Defendants was sufficiently reprehensible to support the award of punitive damages. Moreover, the disparity between the award of compensatory and punitive damages is within the constitutionally permissible ratios identified by *Gore* and *Campbell*. Finally, although the third factor does not weigh in favor of sustaining the award of punitive damages, this factor alone does not compel a conclusion that the award of the jury is not constitutional. Therefore, the Court declines to vacate or reduce the jury's award of punitive damages.

## Conclusion

For the reasons hereinabove stated, the Court will deny Defendants' Rule 50 and Rule 59(e) motions. An appropriate Order follows.

                                                          McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BASEM M.F. HUSSEIN,** | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | ) |
| **UNIVERSAL DEVELOPMENT MANAGEMENT, INC. t/d/b/a The Meadows Apartments, UDE OF MITCHELL ROAD, LTD, and SHERRI LYNN WILSON,** | ) 2:01cv2381 |
| **Defendants.** | ) |

## ORDER OF COURT

AND NOW, this 3rd day of January, 2006, in accordance with the foregoing Memorandum Opinion it is hereby **ORDERED, ADJUDGED and DECREED** that the Rule 50 and Rule 59 Motions of Defendants, Universal Development Management, Inc., t/d/b/a The Meadows Apartments, UDE of Mitchell Road, Ltd., and Sherri Lynn Wilson (*Document Nos. 136 and 137*) are **DENIED**.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:   Craig L. Fishman, Esquire
      Email: clf@tarasilaw.com

      R. Eric Hall, Esquire,
      Email: rerichall@yahoo.com

      James R. Miller, Esquire
      Email: jmiller@dmclaw.com

      Rodger L. Puz, Esquire
      Email: rpuz@dmclaw.com